UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
|
RAYMOND BROWN, |
|
                Petitioner, |
| 07 Civ. 5906 (KMW)
  -against- |
| OPINION AND ORDER
DARWIN LACLAIRE, Superintendent, |
    Great Meadow Correctional |
    Facility, |
|
                Respondent. |
|
------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

    Pro se Petitioner Raymond Brown, a New York state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his plea of guilty to one count of murder in the second degree. Petitioner contends that he felt "coercive pressure" to plead guilty to the murder charge, because the same judge's conduct during a previous trial convinced him that he could not receive a fair trial in front of the same judge.[1]

    For the reasons discussed below, the Court DENIES the petition. First, Petitioner's claim is barred because Petitioner did not raise it in his first motion to vacate the judgment resulting from his guilty plea pursuant to New York Criminal Procedure Law ("CPL") § 440, and Petitioner has not demonstrated valid cause for this procedural default. Even if Petitioner could overcome the procedural bar, Petitioner's claim fails, in any event, on the merits. The state court's decision that Petitioner's coercion claim was

---

[1] Petitioner's habeas petition challenging his trial convictions is also before this Court. Brown v. Conway, 06-Civ-2574 (KMW). The Court today denies that petition in a separate opinion and order.

1

"without merit" and "refuted by the record" was not contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

## BACKGROUND

I.  Proceedings in the Trial Court

On January 24, 2000, a Bronx County grand jury charged Petitioner (Indictment No. 425/2000, "No. 425") with the November 1999 murder of Dwayne Hamilton.  On April 9, 2001, a second indictment was filed (Indictment No. 1786, "No. 1786"), charging Petitioner with two counts of attempted murder and other weapons-related offenses in connection with the April 1999 shooting of Xaviar Roman and the May 1999 shooting of Charles Cox.

The charges contained in the second indictment, No. 1786, were tried first, in May 2001, before Justice Phyllis Bamberger in Supreme Court, Bronx County.  On May 30, 2001, a jury convicted Petitioner of two counts of attempted murder in the second degree, two counts of criminal possession of a weapon in the second degree, and two counts of criminal possession of a weapon in the third degree (Petitioner's "trial convictions").

The following week, on June 4, 2001, Petitioner again appeared before Justice Bamberger, for trial on the first indictment, No. 425.  Petitioner's counsel informed the court that his client wished to plead guilty to one count of murder in the second degree, with the understanding that he would receive a minimum sentence of fifteen years to life imprisonment on the murder conviction, and that this sentence would run concurrently with the sentence still to be imposed on the trial convictions.

The court explained that the disposition of this indictment would be independent from the trial convictions, and that if the trial convictions were later reversed on appeal, his guilty plea and sentence under this indictment "would stand."  The court also explained that, by entering a guilty plea, Petitioner would waive his right to appeal his murder conviction, "except to challenge the knowingness and voluntariness of [the] plea and the legality of [the] sentence."  (Killian Decl.; Ex. 1, Tr. 14-15.)  After conferring with his attorney, Petitioner stated that he understood the terms of the plea.

The court asked Petitioner if anyone "had force[d] you to enter this plea to the murder case or [made] you do it against your will."  Petitioner replied, "No, your honor.  I spoke with my family and they say that it's the best, it's the best thing."  The court inquired, "So you're doing this because you think this is the best way to resolve the case?"  Petitioner replied, "Yes, your Honor."  (Tr. 16.)

Finally, the court asked Petitioner to describe the events that took place on November 2, 1999.  Petitioner stated that he "shot Dwayne Hamilton several times to cause his death."  (Tr. 19-20)

On August 9, 2001, the court sentenced Petitioner pursuant to his trial convictions and his plea conviction.  Pursuant to his trial convictions, the court sentenced Petitioner to an aggregate term of fifty years imprisonment:  a determinate term of twenty-five years on each attempted murder conviction, to run consecutively, and terms of fifteen years and seven years on the two weapons possession convictions, to run concurrently with the other two terms of imprisonment. (No. 1786.)  The court next sentenced Petitioner to an indeterminate sentence of fifteen years to life imprisonment for the Hamilton murder (No. 425), to run concurrently with the sentence imposed on Petitioner's trial convictions.

II. Appeals in the State Courts

    A. Petitioner's First § 440 Motion

Over a year later, on October 29, 2002, Petitioner, in a pro se motion, moved the trial court to vacate the judgment of conviction on both indictments, pursuant to New York Criminal Procedure Law § 440.10, arguing that, inter alia, his status as an illegal alien deprived the court of jurisdiction, and that his counsel was ineffective in not raising this defense at trial. (See Killian Decl.; Ex. 2.) On April 28, 2003, the trial court denied the motion. (See Killian Decl.; Ex. 5.)

    B. Petitioner's Direct Appeal

Petitioner also appealed both judgments, through his assigned appellate counsel. Petitioner's brief raised two issues, both of which concerned his trial convictions: (1) whether the trial court erred when it found that defense counsel's explanation for the exercise of a peremptory challenge was pre-textual under Batson v. Kentucky; and (2) whether the trial court improperly allowed evidence that Petitioner shot a third person (i.e., Dwayne Hamilton) pursuant to the identity exception to New York's Molineux rule. Petitioner also filed a pro se supplemental brief that raised a third issue: whether the trial court abused its discretion curtailing defense counsel's ability to effectively cross-examine the alleged victims. Petitioner did not raise any issue with respect to his guilty plea in either the brief prepared by assigned appellate counsel or his pro se brief. In fact, the brief prepared by assigned appellate counsel states that "no challenge is made below to the propriety of the conviction under Indictment No. 425/00 [Petitioner's plea conviction], and that conviction should therefore be affirmed." (Killian Decl.; Ex. 6, Br. at 3.)

4

On December 14, 2004, the New York State Appellate Division, First Department, rejected Petitioner's arguments and affirmed both judgments. People v. Brown, 13 A.D.3d 145 (1st Dept. 2004). Leave to appeal was denied on March 11, 2005.[2]  People v. Brown, 4 N.Y.3d 828 (2005).

C. Petitioner's Second § 440 Motion

On June 24, 2004, during the time Petitioner's appeal to the Appellate Division was pending, Petitioner moved the trial court, now acting pro se, to vacate the judgment resulting from his guilty plea (Indictment No. 425), pursuant to CPL § 440.10 (Petitioner's "second § 440.10 motion").  Petitioner claimed that he was under "coercive pressure" when he pled guilty to the murder charge, due to "fear visited upon him" by the trial judge's statements and rulings during his earlier trial (Indictment No. 1786). Petitioner claimed that the judge's conduct at trial (1) demonstrated bias against Petitioner, and (2) convinced Petitioner that he would not receive a fair trial if he proceeded to trial on Indictment No. 425 in front of the same judge.  Petitioner claimed that his guilty plea was involuntary and violated due process.

In support of his motion to vacate the murder conviction, Petitioner cited several exchanges between the judge and defense counsel during the trial.  One of these exchanges occurred in connection with defense counsel's application to introduce certain of Petitioner's pre-trial statements (to rebut the prosecutor's use of other such admissions).  Initially, the trial court rejected the application, opining that there was no case law to support the defendant's argument.  (May 9 Tr. 5, 11-12; see Killian Decl.; Ex.

---

[2] On April 3, 2006, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his trial convictions on the same grounds raised in his direct appeal.  As noted above, the Court today denies this petition in a separate opinion and order.

5

17, Br. 5.)[3]  Overnight, the trial court did further research and discovered some case law that supported defense counsel's position.  The judge expressed her displeasure with counsel (more so defense counsel) for not having alerted the court to the case law.  (May 10 Tr. 24-25, 27)   The judge stated that "if anybody knew this yesterday and didn't tell me even though I asked for it, I think you're behaving in a horrendous manner."  (Tr. 25.)  The following exchange ensued:

> THE COURT:  So if you know of some authority that supports your argument, it would be helpful if you cited it to me.
> DEFENSE COUNSEL:  I don't have one.
> THE COURT:  That's called sandbagging the judge, Mr. Torres, and I really don't appreciate that.  I really don't.
> DEFENSE COUNSEL:  Do you think that . . . if I had a case I wouldn't give it to you?  Do you think I want just one statement to come in?  I made the argument, I had no authority for it.

(Tr. 28.)  Petitioner alleges he was "appalled" at this exchange and could not comprehend why the court was criticizing his attorney.  (Killian Decl.; Ex. 11, Mem. 5; see also Ex. 17, Br. 6.)

Later, during jury selection, another conflict between the court and defense counsel (over what the judge described as defense counsel's record of having challenged "every white juror on this panel") prompted the judge to comment, "I'm really disturbed by your behavior in this case.  I really find it unconscionable."  (May 14-15 Tr. 243-44).  The following exchange took place:

> DEFENSE COUNSEL:  I think you're exhibiting a certain amount of hostility towards me.  I don't know where it's coming from, I don't care, but I do care that this man receive a fair trial and if you can't -
> THE COURT:  He's getting a very fair trial, Mr. Torres.

---

[3] Transcripts of the pre-trial hearings, voir dire, and trial on Indictment No. 1786 were provided to the Court by Assistant District Attorney Nancy Killian in connection with Petitioner's habeas petition challenging his trial convictions.  Brown v. Conway, 06 Civ. 2574 (KMW) (Dkt. Nos. 7-13).  The Court considers these transcripts in its ruling on the instant petition, and considers them as part of the record in this case.

6

> DEFENSE COUNSEL: If you can't refrain from continuing this hostility toward me personally, I would ask you to recuse yourself and let us try the case before a judge that can refrain from being hostile towards me infecting my client's rights.

(Tr. 244.) Defense counsel then moved for a mistrial and recusal on the ground that: "there appears to be, the court has exhibited certain hostility towards me personally and has made comments about how I have been acting during this trial." (Tr. 260-61.) Defense counsel stated, on the record, that: "My client has expressed to me it's an appearance that this Court somehow disfavors me personally as a lawyer." (Tr. 263.) The judge responded that "she did not have time to dislike lawyers personally" but reiterated that she felt counsel had "sandbagged" the court by making an "important application with no authority at a time when I was mistaken about the law." The court denied the motions for a mistrial and for recusal. (Tr. 263-64.)

Petitioner alleged that, after these exchanges, he proceeded "in fear of the judge." Petitioner also alleged that he discussed his concern about the judge with his family and that they also "responded with fear."[4] Petitioner contends that: "It is difficult to believe that the defendant's witnessing of the trial judge's outrageous accusations [and improper rulings] did not have an effect (coercive pressure) on the defendant, to take the plea that was offered. The defendant's guilty plea should not stand, even if only in part it was

---

[4] Petitioner alleged in his second § 440 motion that that he told certain family members that one reason he decided to plead guilty was his fear that the judge was biased against him. The People responded that Petitioner "failed to submit an affidavit from any family member tending to substantiate his claims, and has offered no explanation for his failure to do so." In his reply, Petitioner claimed that he tried to obtain an affidavit from a particular family member, but that the person refused to respond to any of his letters. In its Order dated August 12, 2005, the trial court concluded that Petitioner's inability to obtain an affidavit from a family member to substantiate his claim was irrelevant, because the relevant facts in deciding Petitioner's claim of <u>judicial</u> coercion were available in the record of his plea and his trial. (Killian Decl.; Ex. 16.)

7

motivated by duress visited on defendant." (Killian Decl.; Ex. 11, Mem. 7-8; <u>see also</u> Ex. 17, Br. 6-7.)

On August 5, 2004, the trial court denied Petitioner's second § 440.10 motion, relying on two procedural grounds: (1) pursuant to CPL § 440.10(2)(b), the claim should have been raised on direct appeal because "the record" of the plea and trial provided an adequate basis for review of the claim, and (2) pursuant to CPL § 440.10(3)(c), Petitioner was "in a position to adequately raise the claim" in his previous § 440 motion, but failed to do so. (<u>See</u> Killian Decl.; Ex. 14.)

On August 6, 2004, before Petitioner received a copy of the trial court's decision, Petitioner sent a reply memorandum to the court, arguing that his claim should not be barred under CPL § 440.10(3)(c) because he had not received a copy of the transcripts of the plea proceeding and the trial at the time he filed his first § 440 motion, and therefore was not in a position to adequately raise the coercion claim. The court treated Petition's memorandum as a motion to re-argue, and granted re-argument. In an opinion dated August 12, 2004, the court again denied Petitioner's motion. The court concluded that Petitioner was "obviously personally aware of all the circumstances that led him to enter that plea," and, thus, he did not need copies of the relevant transcripts in order to assert the claim that his plea was coerced. (<u>See</u> Killian Decl.; Ex. 16.)

On October 21, 2004, Petitioner, through assigned counsel, appealed the denial of his second § 440.10 motion. Petitioner argued that the trial court violated his constitutional rights to due process when it summarily denied this motion. On December 22, 2005, the Appellate Division affirmed the trial court's decision. The Appellate Division first concluded that the trial court properly exercised its discretion in summarily

8

denying Petitioner's motion pursuant to CPL § 440.10(3)(c), because Petitioner was in a position to raise the claim in his previous § 440 motion.[5] The Appellate Division then concluded "[f]urthermore" that the motion was "without merit" because it was based "upon defendant's conclusory and otherwise unsupported claims, which were refuted by the record." People v. Brown, 24 A.D.3d 271 (1st Dept. 2005). (citing CPL § 440.30(4)(b), (d)).[6] On April 19, 2006, the New York State Court of Appeals denied Petitioner leave to appeal. People v. Brown, 6 N.Y.3d 846 (2005).

    C. The Habeas Petition

On May 14, 2007, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 2.) Petitioner also applied for the appointment of counsel pursuant to 18 U.S.C. § 3006A(g). (Dkt. No. 3.)

In lieu of an answer, Respondent filed a motion to dismiss, arguing that the petition was untimely, because it was filed after the relevant one-year AEDPA statute of limitations. On March 26, 2009, this Court denied the motion to dismiss, finding that the statute of limitations should be equitably tolled because certain of Petitioner's legal papers were lost during his transfer between correctional facilities, and ordered Respondent to submit an answer. The Court also denied Petitioner's application for counsel without prejudice, with leave to renew after Respondent had answered. Brown v. Laclaire, 2009 WL 804131 (S.D.N.Y. Mar. 26, 2009). (Dkt. No. 13.)

---

[5] The Appellate Division's decision did not address the trial court's alternative procedural ruling; namely, that the claim was barred, pursuant to CPL § 440.10(2)(b), because the claim was based on facts that appear in the trial record, and, therefore, the claim should have been raised on direct appeal.

[6] CPL 440.30(b) provides that a motion to vacate may be denied without a hearing if, inter alia, it is based on unsubstantiated allegations. CPL 440.30(d) provides that a motion may be denied without a hearing if, inter alia, it is based on allegations refuted by court records.

Respondent submitted a declaration and memorandum of law in opposition to Petitioner's motion on May 7, 2009 (Dkt. No. 14); and Petitioner submitted a declaration and memorandum of law in reply on June 25, 2009 (Dkt. No. 16). On July 9, 2009, Petitioner renewed his application for appointment of counsel. (Dkt. No. 17.)

**DISCUSSION**

For the reasons discussed below, the Court denies the petition. The Court concludes that (1) Petitioner's challenge to his guilty plea is procedurally barred because Petitioner failed to raise his claim in his first motion to vacate the judgment resulting from his guilty plea; (2) Petitioner failed to demonstrate "cause" sufficient to overcome this procedural default; and (3) even if Petitioner could overcome the procedural bar, his claim must be denied, because the state court's determination that the claim was "without merit" is not contrary to or an unreasonable application of clearly established federal law.

I.  Procedural Default

    A.  Legal Standard

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. Fama v. Commissioner of Correctional Services, 235 F.3d 804, 809 (2d Cir. 2000); see Coleman v. Thompson, 501 U.S. 722, 750 (1991). However, procedural default in state court will bar federal habeas review only when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a

state procedural bar." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Harris v. Reed, 489 U.S. 255, 263 (1989)).

    B.  Application

In this case, habeas review is foreclosed because the New York State Appellate Division — the last state court rendering a judgment on Petitioner's claim — relied on Petitioner's failure to raise the coercion claim in his first § 440 motion as an independent ground in affirming the trial court's denial of the motion.[7] "Federal courts in this circuit have found [§ 440.10(3)(c)] to be [an] adequate and independent procedural bar[] for the purposes of federal habeas review." Collins v. Superintendent Conway, No. 04-Civ-4672, 2006 WL 1114053, *3 (S.D.N.Y. Apr. 26, 2006); see Rosario v. Bennett, No. 01-Civ-7142, 2002 WL 31852827, *21 (S.D.N.Y. Dec. 20. 2002); Ryan v. Mann, 73 F. Supp.2d 241, 248 (E.D.N.Y. 1998).

The fact that the Appellate Division also considered, in the alternative, the merits of Petitioner's due process claim does not — contrary to Petitioner's argument — make the claim amenable to federal review. Federal review is foreclosed "even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn, 98 F.3d at 724 (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990); see Harris, 489 U.S. at 264 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding."); see also Fama, 235 F.3d at 811 n.4.

---

[7] CPL § 440.10(3)(c) provides in pertinent part that: "[T]he court may deny a motion to vacate when . . . [u]pon a previous motion made pursuant to this section, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."

Thus, to overcome the procedural bar, Petitioner must demonstrate "cause" for the default (and actual prejudice attributable thereto) or that a failure to consider the claim will result in a fundamental miscarriage of justice.[8]

II. "Cause and Prejudice"

    A. Legal Standard

The "cause" standard requires Petitioner to show that some objective factor external to him or his counsel impeded their efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). Cause exists, for example, when the factual or legal basis for a claim was not reasonably available to the defendant, or when some interference by state officials made compliance with the procedural rule impracticable. See McClesky v. Zant, 499 U.S. 467, 493-94 (1991). A petitioner's pro se status or ignorance of the law does not excuse his failure to establish "cause" for the procedural default. Tapia-Garcia v. United States, 53 F.Supp.2d 370, 378 (S.D.N.Y. 1999).

The "prejudice" requirement is met by a showing of "actual prejudice resulting from the errors of which [petitioner] complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). However, if a petitioner cannot show valid cause for the default, the federal habeas court need not consider "prejudice." See, e.g., Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992).

    B. Application

---

[8] A petitioner may claim a "fundamental miscarriage of justice" only if he can supplement his alleged constitutional violation with a "colorable showing of factual innocence" in the form of newly adduced evidence. McCleskey v. Zant, 499 U.S. 467, 495 (1991); see Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006). Petitioner does not attempt to make any such showing.

Petitioner claims that he did not challenge the voluntariness of his guilty plea in the first § 440 motion because he did not, at that time, have access to transcripts from the completed trial, and that, as a pro se litigant, he felt any argument he could make would be stronger if accompanied by citations to the record.  (See Killian Decl.; Ex. 17, Br. 14.)

Although Petitioner's explanation for his failure to raise the claim is understandable, it does not rise to the level of cause required to excuse the procedural default.  At the time of his plea, Petitioner was, as the trial court concluded, personally aware of his reasons for pleading guilty, and consequently, could have formulated his voluntariness claim at the time he filed his first § 440 motion.  Cf. Pena v. Fischer, No. 06-Civ-5427 (AKH), 2007 WL 636504, *2 (S.D.N.Y. Mar. 1, 2007) (holding that Petitioner's inability to obtain transcripts of hearing minutes does not constitute "extraordinary circumstances prevent[ing] him from filing his petition on time" that would justify equitable tolling of AEDPA's limitations period).  Petitioner also waited some six months after filing his brief on direct appeal in the Appellate Division (a brief that quoted heavily from the trial transcripts) to raise any issue with respect to his guilty plea.  In that brief, Petitioner conceded that "no challenge is made . . . to the propriety of the conviction under Indictment No. 425/00 [Petitioner's plea conviction], and that conviction should therefore be affirmed."  Finally, Petitioner does not allege any improper interference by officials that prevented his access to transcripts of his plea or the completed trial.  See McClesky, 499 U.S. at 494.

Because Petitioner has not demonstrated cause for the default, the Court need not consider whether he can demonstrate actual prejudice as a result of his allegedly

13

defective guilty plea.  Thus, Petitioner's habeas claim is procedurally barred and must be dismissed.

III.  The Merits

Even if Petitioner could demonstrate sufficient cause (and prejudice attributable thereto) to overcome the procedural bar, the petition fails, in any event, on the merits. The state court's decision, denying Petitioner's due process claim as without merit and refuted by the record, is (1) entitled to deference as an adjudication on the merits under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and (2) not contrary to or an unreasonable application of clearly established Supreme Court precedent.  As set forth below, Petitioner has failed to demonstrate that his decision to plead guilty on the murder charge was the product of any constitutionally unacceptable conduct on the part of the trial judge that is sufficient to render his subsequent plea involuntary.

A.  Standard of Review

Under AEDPA, if a habeas petitioner's claim was "adjudicated on the merits in State court proceedings," a federal court can grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States,"[9] or was "based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).  State court factual findings "shall be presumed to be correct" and the

---

[9] A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]."  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law when the decision "correctly identifies the governing legal rule," but "applies [the rule] unreasonably to the facts of the prisoner's case."  Id. at 413.

14

petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. at § 2254(e)(1).

An "adjudication on the merits" is one that (1) disposes of the claim on substantive grounds, and (2) reduces that disposition to judgment.  Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007); Eze v. Senkowski, 321 F.3d 110, 121-22 (2d Cir. 2003).  "An issue may be considered to be adjudicated on its merits even when the state court does not specifically mention the claim but uses general language referable to the merits."  Eze, 321 F.3d at 122 (internal citation and quotation marks omitted).  The state court need not specifically refer to the federal claim or to federal law as a prerequisite to AEDPA's deferential standard.  Hines v. Miller, 318 F.3d 157, 160 (2d Cir. 2003).  Finally, the fact that a state court rules in the alterative on the merits of a claim does not deprive that ruling of AEDPA's deferential standard of review.  Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (per curiam).

The Appellate Division's determination that Petitioner's claim (in addition to being procedurally barred) was without merit was an adjudication on the merits that is entitled to AEDPA deference on federal habeas review.

    B.  Violations of Due Process

Petitioner appears to be making at least two claims: (1) that his plea was involuntary and therefore violated due process, and (2) that the trial court's summary denial of his second § 440 motion without a hearing also violated due process.  See Pabon v. Wright, 459 F.3d 241, 248 (2d Cir 2006) (when a petitioner appears pro se, the Court must construe his pleading liberally and interpret them "to raise the strongest arguments they suggest").

           1.  Voluntariness of Plea

Due process requires that a guilty plea be made "voluntarily, knowingly, and intelligently." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005); see Brady v. United States, 397 U.S. 742, 748 (1970). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992) (citation omitted).

"[A] plea . . . is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh the options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988). "[T]he Supreme Court has instructed that, with regard to voluntariness, a guilty plea 'must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentations (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'" United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) (quoting Brady, 397 U.S. at 755).

When a guilty plea is challenged as being the product of coercion, a court considers not only the subjective state of mind of the defendant, but also "the constitutional acceptability of the external forces inducing the guilty plea." United States v. Davis, 48 Fed. App'x 809, 812 (2d Cir. 2002) (summary order) (quoting Iaea v. Sun, 800 F.2d 861, 866 (9th Cir. 1986)); see also United States v. Juncal, 245 F.3d 166, 174 (2d Cir. 2001) (explaining that "commonplace feelings of being 'coerced' in the lay sense of the word by an attorney's recommendation to plea guilty" are not valid grounds for

16

withdrawing a plea); cf. Miller v. Fenton, 474 U.S. 104, 115-16 (1985) ("Although sometimes framed as an issue of 'psychological fact,' the dispositive question of the voluntariness of a confession has always had a uniquely legal dimension.")

Finally, plea allocutions are entitled to a "strong presumption of veracity" and are generally treated as conclusive in the face of a later attempt to contradict them. Doe, 537 F.3d at 213; Adames v. United States, 171 F.3d 728, 733 (2d Cir. 1999); Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Petitioner alleges that the trial judge's conduct at the completed trial caused him to believe that the judge was biased against him. Petitioner asserts that his decision to plead guilty was motivated, in part, by the fear of having to appear before the same judge on the murder charge. The record of the completed trial reveals that the judge expressed her displeasure with defense counsel on a number of occasions, even prompting counsel at one point to state his client's concern that the judge "somehow disfavors me personally as a lawyer." However, even assuming that Petitioner's decision to plead guilty was motivated by fear of bias on the part of the judge, such subjective feelings of coercion are, by themselves, insufficient to render a plea involuntary. In this case, Petitioner has not pointed, and the record does not reveal, any constitutionally unacceptable conduct on the part of the trial judge that could rise to the level of improper judicial coercion.[10] See Davis, 48 Fed. App'x at 812 (rejecting challenge to voluntariness of guilty plea on ground that defendant felt "subjectively coerced" into pleading guilty by, among other

---

[10] The fact that Petitioner raised his coercion claim some three years after entering his guilty plea weighs against a finding that the plea was involuntary. See Doe, 537 F.3d at 213 ("Whereas a 'swift change of heart' may indicate a 'plea made in haste or confusion,' the fact that defendant waited five months to file his motion strongly supports the district court's finding that the plea was entered voluntarily.") (quoting United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (internal citations omitted)).

17

things, the trial judge's refusal to grant him an adjournment to resolve his differences with counsel, where no showing that trial judge abused his discretion in denying the motion); Oyague v. Artuz, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (Weinstein, J.) (rejecting challenge to voluntariness of guilty plea based on an alleged off-the-record conversation when the trial judge warned petitioner that if he went to trial and was convicted he would likely face the rest of his life in prison, where there was no evidence that the alleged statement was "motivated by anything but a desire to fully inform petitioner of the consequences of going to trial" and where petitioner's claim that the trial court "badgered him, threatened him, and expressed animus toward him [was] belied by the record"); see also Doe, 537 F.3d at 212-213 (concluding that prosecutor's statement that, if defendant went to trial, letters to his co-defendants would be disclosed reflected "an entirely legal-and wholly predictable-scenario, and thus could not have rendered the defendant's plea involuntary").

The Court recognizes that criminal defendants choose to plead guilty for a variety of reasons.  See Fabre v. Taylor, No. 08 Civ. 5883 (DLC), 2009 WL 1457169, * 4 (S.D.N.Y. May 26, 2009) (noting that "defendants frequently face difficult choices when entering pleas of guilty," including the fact that defendants often face more serious charges if they choose to go to trial, but that these difficult choices "do not [ ] render the plea involuntary").  In this case, Petitioner feared that, in light of the judge's rulings and the jury's verdict at the first trial, the outcome of the second trial would have been the same.[11]  Petitioner thus made a considered judgment to avoid what would have been, in

---

[11] To the extent that Petitioner also claims that his decision to plead guilty was "coerced" by the trial judge's allegedly improper legal rulings at the completed trial, this claim is without merit. The Court today, in a separate opinion denying Petitioner's habeas petition challenging his trial

his and family's view, a murder conviction after trial, and instead accept a minimum sentence of fifteen years to life imprisonment, to run concurrently with the sentence imposed on his trial convictions. This judgment, however difficult, does not render his plea involuntary. See Doe, 537 F.3d at 213.

### 2. Failure to Hold an Evidentiary Hearing

The appropriate standard for deciding whether a state criminal procedural rule violates due process is whether it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Hines v. Miller, 318 F.3d 157, 161-62 (2d Cir. 2003) (quoting Medina v. California, 505 U.S. 437, 445 (1992)). In Hines, the Second Circuit observed that "[b]oth federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." Id. at 162. The court concluded that the failure to hold an evidentiary hearing on a motion to withdraw a plea, therefore, does not offend a deeply rooted or fundamental principle of justice. Id.

Accordingly, in this case, the trial judge's decision not to hold an evidentiary hearing on Petitioner's motion to vacate the judgment resulting from his guilty plea (on the ground that Petitioner was in a position to adequately raise the claim at the time he brought his first § 440 motion), and the Appellate Division's decision that, on the merits, no evidentiary hearing was required under CPL § 440.30(b) and (d) (on the grounds that Petitioner's claim was unsubstantiated and otherwise refuted by the record) did not violate any constitutional requirements of due process.

## IV. Application to Appoint Counsel

---

convictions, Brown v. Conway, 06-Civ-2574 (KMW), rejects Petitioner's same objections to the trial judge's rulings.

Petitioner also moves for the appointment of counsel pursuant to 18 U.S.C § 3006A(g). A court has discretion under the Criminal Justice Act ("CJA") to appoint counsel for any person seeking relief pursuant to 28 U.S.C. § 2254 "[w]henever . . . the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A. In making this determination, courts ascertain, as a threshold requirement, "whether the indigent's position seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Having found the petition ultimately to be without merit, the Court denies Petitioner's application for the appointment of counsel.

## CONCLUSION

Brown's petition for a writ of habeas corpus is denied. (Dkt. No. 2) Brown's application for counsel is also denied. (Dkt. No. 17) The Court declines to issue a certificate of appealability. Brown has not made a substantial showing of a denial of a federal right, and therefore, appellate review is not warranted. Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005). Petitioner is provided with a copy of all unpublished decisions cited in this Order.

The Clerk of the Court is directed to close this case. Any pending motions are moot.

SO ORDERED.

Dated: New York, New York
       March 29, 2010

_____
Kimba M. Wood
United States District Judge